IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOSEPH L. YOUNG                    *

Plaintiff                          *

v                                  *         Civil Action No. GLR-16-1321

DETECTIVE DANIEL SANTOS, and       *
DETECTIVE MICHAEL BOYD
                                   *
Defendants
                                  ***

# MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants, Detective Daniel Santos and Detective Michael Boyd's Motion for Judgment on the Pleadings or, in the Alternative, Motion for Summary Judgment (ECF No. 27). Defendants renewed their Motion in response to Plaintiff Joseph L. Young's Amended Complaint (ECF No. 30). (ECF No. 31). The Motions are ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2016). For the reasons outlined below, the Court will grant Defendants' Motions.[1]

---

[1] Also pending before the Court is Young's Motion to Appoint Counsel (ECF No. 34). A federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1) is a discretionary one, and may be considered where an indigent claimant presents exceptional circumstances. See Cook v. Bounds, 518 F.2d 779, 780 (4th Cir. 1975); see also Branch v. Cole, 686 F.2d 264, 266 (5th Cir. 1982). Upon careful consideration of the motions and previous filings by Plaintiff, the Court concludes that he has demonstrated the wherewithal to either articulate the legal and factual basis of his claims himself or secure meaningful assistance in doing so. There are no exceptional circumstances that warrant the appointment of an attorney to represent Young under §1915(e)(1). Accordingly, the Court will deny Young's Motion.

## I. BACKGROUND[2]

Young is incarcerated in the Federal Bureau of Prisons and confined to McCrary Penitentiary in Pine Knot, Kentucky. He states that on February 28, 2012, Officer Lane was dispatched to 307 N. Payson Street in Baltimore, Maryland for a report of a shooting. (Compl. at 4, ECF No. 1). Shortly thereafter, Detective Michael Boyd responded to the scene and assumed control of the investigation. (Id.).

Boyd testifies that Raylanair Reese voluntarily contacted the Baltimore Police Department and provided information implicating Plaintiff in McFadden's shooting. (Boyd Aff. at 2, ECF No. 27). Based on the information provided by Reese, Boyd prepared a photographic array that included Plaintiff's picture and presented it to McFadden on March 4, 2012. (Id.). At that time, McFadden positively identified Plaintiff as the shooter. (Id.). Young adds that the array featured six Black men, one of whom was him, and agrees that the eyewitness identified Young as the shooter. (Compl. at 5). Santos testifies that he witnessed McFadden's positive identification of Plaintiff as the shooter from the photographic array prepared by Boyd. (Santos Aff. at 2, ECF No. 27). Santos further states that Reese continued to provide information regarding Plaintiff before and after his arrest. (Id.).

Based on the information provided by Reese and McFadden's identification of Young, Boyd states that a warrant was issued on March 5, 2012 for Plaintiff's arrest.

---

[2] Unless otherwise noted, the facts outlined here are uncontroverted and the Court views them in the light most favorable to Young.

(Id.). Plaintiff was found and arrested at 3011 Normount Court; the premises were searched pursuant to a search and seizure warrant. (Id.).

On March 2, 2012, Santos and Boyd charged Plaintiff with attempted murder and handgun violations. Young asserts that Defendants obtained fraudulent search and seizure warrants, which were then executed at Young's residence in Baltimore. (Id.).

Young states that the case against him unraveled quickly because the shooting victim was unable to identify him as the shooter and "recanted his statement." (Id. at 6). In addition, Plaintiff alleges that the "anonymous state witness positively stated that Plaintiff was not the person she had seen." (Id.). Young also pleads that there was no warrant issued at the time of the search of his house, and there was evidence that Raylanair Reese, a witness for the State, had been coerced to provide a statement. Plaintiff alleges that there was evidence of 458 text messages from Defendant Santos to Reese suggesting what she should say. (Id.).

On January 8, 2014, the case against Young was dismissed. Young states that this was due to Defendants using perjurious statements to affect an arrest. (Id.). Young brings claims based on false arrest, defamation of character, malicious prosecution, false imprisonment, and emotional distress under 42 U.S.C. § 1983 (2018). As relief, Plaintiff seeks damages of $500,000. (Id. at 3).

In his Supplement to the Complaint (ECF No. 30), Plaintiff reiterates the same

allegations raised in the Complaint and adds as Defendants the State of Maryland,[3] Baltimore City Police Commissioner Kevon Davis, Sgt. Fried, Detectives Maurice Ward, Krauss, Addi, Brooks and Garrett. Young adds a claim that Ward participated in coercing Raylanair Reese in giving a statement implicating Plaintiff in the shooting. (Id. at 7). He alleges that "the actions of Boyd, Santos, Krauss,[4] Addi, Brooks, Fried, and Garrett" were unlawfully unreasonable "and without probable cause."[5] (Id. at 10). He asserts that Police Commissioner Davis is responsible for the policies of the Baltimore City Police Department and the actions of the employees of the department. (Id. at 11). Plaintiff further pleads that Davis had a duty to intervene and his failure to do so "ratified" the actions of the police officers involved in Plaintiff's arrest and the search of his property. (Id. at 12). None of the additional Defendants have been served with the Complaint.

## II. DISCUSSION

**A. Standard of Review**

    **1. Motion to Dismiss**

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v.

---

[3] The State of Maryland is not a "person" within the meaning of 42 U.S.C. §1983 (2018) and is also immune from suit for damages under the Eleventh Amendment. Thus, to the extent any claim is asserted against it, the claim is dismissed.

[4] Krauss' name appears for the first time in the body of the pleading.

[5] There are no specific factual allegations raised against "Frauss," Addi, Brooks, Fried, or Garrett.

City of Goldsboro, 178 F.3d 231, 243–44 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd sub nom., Goss v. Bank of Am., NA, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cty., 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But, the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

Young filed his Amended Complaint pro se. Pro se pleadings are liberally construed and held to a less stringent standard than pleadings drafted by lawyers. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)); accord Brown v. N.C. Dep't of Corr., 612 F.3d 720, 722 (4th Cir. 2010). Pro se complaints are entitled to special care to determine whether any possible set of facts would entitle the plaintiff to relief. Hughes v. Rowe, 449 U.S. 5, 9–10 (1980). But even a pro se complaint must be dismissed if it does not allege "a plausible claim for relief." Forquer v. Schlee, No. RDB-12-969, 2012 WL 6087491, at *3 (D.Md. Dec. 4, 2012) (citation and internal quotation marks omitted).

**2.     Conversion to a Motion for Summary Judgment**

In this case, Defendants caption each of their Motions in the alternative for summary judgment. (ECF Nos. 27, 31). A motion styled as a motion to dismiss or, in the alternative, for summary judgment implicates the Court's discretion under Rule 12(d). See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty., 788 F.Supp.2d 431, 436–37 (D.Md. 2011), aff'd sub nom. Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty., 684 F.3d 462 (4th Cir. 2012). This Rule provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d).

The Court "has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" Wells-Bey v. Kopp, No. ELH-12-2319, 2013 WL 1700927, at

*5 (D.Md. Apr. 16, 2013) (quoting 5C Wright & Miller, <u>Federal Practice & Procedure</u> § 1366, at 159 (3d ed. 2004, 2012 Supp.)). The Court's complete discretion is guided by the United States Court of Appeals for the Fourth Circuit's two-part test for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion. Under this test, the "parties [must] be given some indication by the court that it is treating the 12(b)(6) motion as a motion for summary judgment" and "the parties [must] first 'be afforded a reasonable opportunity for discovery.'" <u>Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt.</u>, 721 F.3d 264, 281 (4th Cir. 2013) (quoting <u>Gay v. Wall</u>, 761 F.2d 175, 177 (4th Cir. 1985)).

When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur. See <u>Moret v. Harvey</u>, 381 F.Supp.2d 458, 464 (D.Md. 2005).

Here, Defendants caption their Motion in the alternative for summary judgment and attach matters beyond Young's Complaint for the Court's consideration. (ECF No. 28). Young does not file a 56(d) affidavit requesting discovery. Thus, because the Court will rely on Defendants' materials outside the pleadings, the Court will construe Defendants' Motion as a motion for summary judgment.

**2.     Motion for Summary Judgment**

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. <u>Ricci v. DeStefano</u>, 557 U.S. 557, 586 (2009); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S.

242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing there is genuine dispute of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." Othentec Ltd. v. Phelan, 526 F.3d 135, 141 (4th Cir. 2008) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing

law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265. A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. If the nonmovant has failed to make a sufficient showing on an essential element of her case where she has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

**B.     Analysis**

Plaintiff alleges that his right to be free from an unreasonable arrest and subsequent search of his property was violated. An arrest is legally justified if it is effected pursuant to "a warrant which appears on its face to be legal," or without a warrant if the officer "has probable cause to believe that a felony has been committed, and that the arrestee perpetrated the offense." Bost v. Bradds, No. SAG-12-2544, 2013 WL 5308275, at *3 (D.Md. Sept. 18, 2013) (quoting Ashton v. Brown, 660 A.2d 447, 472 (Md. 1995)). Thus, in order to state a claim under § 1983 for false arrest, Plaintiff must show that his arrest was made without probable cause. See Street v. Surdyka, 492 F.2d 368, 372–73 (4th Cir. 1974).

Probable cause exists if, "at the moment the arrest was made[,] . . . the facts and circumstances within [the officer's] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing" that the

9

suspect committed the crime. Bost, 2013 WL 5308275, at *3 (alterations in original) (quoting Hunter v. Bryant, 502 U.S. 224, 228 (1991)). Officers have probable cause to arrest an individual when an eyewitness reliably identifies that individual as the perpetrator. June v. Thomasson, No. GLR-14-2450, 2017 WL 3642944, at *10 (D.Md. Aug. 24, 2017). For example, an eyewitness' untainted positive identification of a criminal suspect from a photo array constitutes sufficient probable cause to arrest that suspect. Bost, 2013 WL 5308275, at *4. In fact, even where an eyewitness later rescinds his identification after the individual is arrested, it is nonetheless reasonable for an officer to have relied on this identification as the basis for probable cause to arrest. See Torchinsky v. Siwinski, 942 F.2d 257, 262 (4th Cir. 1991) (granting an officer qualified immunity where he relied on the victim's verbal identification of his attackers to secure a warrant for their arrest, even though the victim later said that the arrestees were not his attackers).

An arrest is not supported by probable cause, however, where an officer falsely asserts that an eyewitness positively identified the suspect in a photo array. See Humbert v. Mayor of Balt. City, 866 F.3d 546, 555 (D.Md. 2017). In Humbert, for example, the court found that a warrant application was not supported by probable cause where the officers falsely claimed that the victim positively identified Humbert as her attacker in a photo array. Id. at 557. Although the victim had a strong emotional reaction when she viewed the Humbert's photo and wrote "that's him" on the reverse of the photo, she told police that she could not positively identify Humbert as her attacker because "she needed to see him in a physical lineup and hear his voice." Id. at 551–52, 556–57. There was

also evidence in the record that the victim reacted strongly to Humbert's photo because one of the officers had shown her a photo of a man who looked like Humbert several days prior and had plainly stated that he was her attacker. Id. at 557. Accordingly, because the warrant application "was based primarily, if not entirely, on the false assertion that the victim positively identified Humbert[,]" the warrant application did not establish probable cause to arrest. Id.

Here, the record establishes that Santos and Boyd had sufficient probable cause to arrest Plaintiff. First, Santos and Boyd had reasonably trustworthy information that an eyewitness to the shooting positively identified Plaintiff as the shooter in a photo array. Plaintiff also fails to identify any deficiency in the presentation of the photo array or plead that the eyewitness did not, in fact, positively identify Plaintiff as the shooter. Therefore, the eyewitness' untainted positive identification of Plaintiff from a photo array alone constitutes sufficient probable cause to arrest Plaintiff. Bost, 2013 WL 5308275, at *4 (D.Md. Sept. 18, 2013).

Moreover, Plaintiff's allegations that McFadden later "recanted his statement" and an "anonymous state witness" said Plaintiff was not the person she had seen are inapposite to this Court's analysis. These events occurred after Santos and Boyd secured the arrest warrant and arrested Plaintiff at his home. When evaluating probable cause, this Court may only consider the facts and circumstances within the officers' knowledge at the exact moment the arrest occurred. See id. at *3. The facts and circumstances known to Santos and Boyd at the time of the arrest—that an eyewitness had positively identified Plaintiff in a photo array—were sufficient to give rise to probable cause. And

even if the victim or other witnesses contradicted the eyewitness' identification after Plaintiff was arrested, it was nonetheless reasonable for Santos and Boyd to rely on the results of the photo array as the basis for their probable cause. See Torchinsky, 942 F.2d at 262.

The claims against the Commissioner Davis are based on a theory of respondeat superior, which is not a theory of liability available in a suit filed under §1983. Love-Lane v. Martin, 355 F.3d 766, 782 (4th Cir. 2004). Young's generalized assertions that Commissioner Davis is responsible for alleged misconduct of officers working for the Baltimore City Police and is responsible for failing to correct alleged widespread corruption, are not sufficiently detailed to create a genuine dispute of material fact that withstands summary judgment. There is no allegation that Davis knew of misconduct in Plaintiff's case and failed to take corrective action.

The Court further concludes that Young's claims against the remaining Defendants do not withstand summary judgment either. The allegations in the Supplemental Complaint naming various police officers does not comply with Rule 8 because they do not provide the named Defendants with "fair notice of what the claim is and the grounds upon which it rests." Swirkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). The claims against Sgt. Fried, Detectives Maurice Ward, Krauss, Addi, Brooks and Garrett do not have any supporting detail describing what each of these Defendants did; they appear to be based simply on a guilt-by-association theory.

To the extent any of these Defendants participated in Young's arrest or the search of his home, as the Court previously discussed, the arrest of Young and the subsequent search of his home were reasonable based on the information available. Thus, any attempt to amend the pleading to include the missing information would be futile. See Goode v. Central Va. Legal Aid Society, Inc., 807 F.3d 619, 624 (4th Cir. 2015).

The Court, therefore, will dismiss Young's action.

### III.  CONCLUSION

For the foregoing reasons, Motion for Judgment on the Pleadings or, in the Alternative, Motion for Summary Judgment (ECF No. 27) and renewed Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 31) are GRANTED. A separate Order follows.

Entered this 30th day of March, 2018.

/s/
George L. Russell, III
United States District Judge